IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARTHUR BOMAR,                          )
                                       )        Civil Action No. 17 – 1035
                     Plaintiff,        )
                                       )        District Judge Nora Barry Fischer
             v.                        )        Magistrate Judge Lisa Pupo Lenihan
                                       )
JOHN E. WETZEL, *et al.,*              )
                                       )        ECF No. 162
                     Defendants.       )
                                       )
                                       )

REPORT AND RECOMMENDATION

I.    **RECOMMENDATION**

For the following reasons, it is respectfully recommended that the Motion  for

Summary Judgment filed by Defendants Braunlich an Tate (ECF No. 162) be granted

and that judgment entered in their favor.

II.   **REPORT**

      A. **Factual and Procedural History**

The following facts are relevant, undisputed and evidenced of record.  *See*

generally Defendants' Statement of Material Facts, ECF No. 163 (referencing Exhibits of

Record, ECF No. 165); Plaintiff's Response to Defendants' Statement of Material Facts,

ECF No. 175 [1]; Plaintiff's Statement of Disputed Factual Issues, ECF No. 176[2]; and

Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment,

ECF No. 177 [3].

<u>Cell Extraction and Transport</u>

The events giving rise to this civil action occurred while Plaintiff, Arthur Bomar,

was incarcerated at SCI-Greene.  On December 14, 2016, he was informed by a sergeant

and a correctional officer that he was going to be transferred to SCI-Graterford because

he had an upcoming court date.  Second Am. Compl. at ¶¶ 34-36, ECF No. 116.  Plaintiff

responded that he did not have a court date and that he intended to refuse to go.  *Id.* at

¶37.  The following day, a lieutenant and two correctional officers attempted to escort

Plaintiff to intake for his transfer to SCI-Graterford, but Plaintiff refused to go.  *Id.* at

¶38.

---

[1] Plaintiff's Response to Defendants' Statement of Material Facts does not comply with LCvR 56.C.1.b, which provides that the party opposing summary must set "forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material) with appropriate reference to the record (See LCvR 56.B.1 for instructions regarding format and annotation)[.]"  All of but two of Plaintiff's denials are not supported by any reference to documents of record that support his denials.  As to the two paragraphs of Defendants' Statement of Material Facts--¶¶ 1 and 2—that Plaintiff has denied and cited a reference, the document referenced is Defendants' Exhibit 1 in their Appendix (ECF No. 165-1) which actually supports Defendants' statement of fact, not Plaintiff's denial.  Plaintiff has also responded to a number of Defendants' Statements of Material Fact with the statement "Plaintiff does not know whether this statement is true."  This response is not sufficient to dispute a moving party's supported statement of fact at the summary judgment stage.  Thus, the Court views the Defendants' Statement of Material Facts that are supported by the record evidence as undisputed.

[2] Similarly, Plaintiff's Statement of Disputed Factual Issues does not reference any supporting evidence of record as required by Fed. R. Civ. P. 56(b)(1) and LCvR 56.B.1, and thus, cannot be considered in ruling on the present motion for summary judgment.

[3] As set forth below, many of the statements in Plaintiff's Declaration are blatantly contradicted by the video evidence, *see* Defendants' Exhibit 6 (delivered to chambers ECF No. 169), or are argumentative and not factual.

Contrary to Plaintiff's contention that there was no reason for him to be transferred to SCI-Graterford, a search warrant was sought by Montgomery County detectives and approved by the Montgomery County District Attorney, and was issued by a Judge of the Montgomery County Court of Common Pleas on December 16, 2016. Defs.' Stmt. Mat. Facts, ¶ 1, ECF No. 163. The December 19, 2016 search warrant compelled the Department of Corrections to transfer Plaintiff to SCI-Graterford so Montgomery County detectives could collect a DNA sample for an investigation of Plaintiff's possible role in a criminal homicide. *Id.* at ¶ 2.

On December 19, 2016, at approximately 7:00 a.m., Defendant Braunlich notified Plaintiff that he was to be transferred to another facility pursuant to a court order. *Id.* at ¶ 3. Plaintiff indicated that he refused to comply with the transfer. *Id.* at ¶ 4. In response, Defendant Braunlich requested that the Hostage Negotiation Team speak with the Plaintiff in an effort to obtain his compliance. *Id.* at ¶ 5. When Plaintiff continued to refuse to comply with the transfer, Defendant Braunlich requested that Officer Standard speak with the Plaintiff in an effort to obtain his compliance. Those efforts also failed. *Id.* at ¶ 6. Pursuant to Plaintiff's continued refusals to comply, Defendant Braunlich requested authority to assemble an extraction team; that authority was granted. *Id.* at ¶ 7. The medical department was simultaneously notified of the planned use of force. *Id.* at ¶ 8.

After the extraction team was assembled and arrived at Plaintiff's cell, Plaintiff was issued multiple direct orders to approach his cell door, be restrained, and exit his

cell without incident.  *Id.* at ¶ 9.  Plaintiff refused all of these direct orders.  *Id.* at ¶ 10.

Plaintiff was issued a final order seeking his compliance with the transfer; upon his

refusal, one application of the chemical agent Oleoresin Capsicum, commonly referred

to as OC spray, was sprayed through the cell door wicket for approximately six

seconds.[4]  *Id.* at ¶ 11; Defs.' Ex. 6 at 7:27:37-7:27:43. After the administration of the OC

spray, Plaintiff approached his door, was restrained and removed from his cell.  ECF

No. 163 at ¶ 12.

Plaintiff was immediately escorted to the unit triage area where Defendant

Nurse Tate was waiting.  *Id.* at ¶ 13; Decl. of Tonya Tate at ¶ 4, ECF No. 165-8.  Upon

Plaintiff's arrival, Defendant Tate decontaminated him from the effects of the OC spray

with a thorough eye wash and conducted a physical exam.  ECF No. 165-8 at ¶ 5.

Defendant Tate's evaluation revealed that Plaintiff had red and watery eyes, but that his

breathing and speech had not been impacted and that he appeared to be in no distress,

and that he did not verbalize any distress to her.  *Id.* at ¶ 6.  While Plaintiff was still in

the unit triage area, Defendant Braunlich informed Plaintiff that he would be placed

into a restraint chair for escort purposes and taken to the intake area to effectuate his

transport.  ECF No. 163 at ¶¶ 13, 44.

---

[4] Paragraph 11 of Defendants' Statement of Material Facts states that Defendant Braunlich warned Plaintiff that a refusal of his final order would result in the use of OC spray.  *See* ECF No. 163 at ¶ 11. However, the video recording does not corroborate this statement. *See* Defs.' Ex. 6 at 7:27:18-7:27:37.   The Court finds that this discrepancy is not material to Plaintiff's excessive force claim because even if the Court assumes that no such warning was given, no reasonable factfinder could find that Defendant Braunlich used excessive force, based on the overwhelming undisputed evidence of record. *See* discussion, *infra*, in Section C part 2.

Upon arriving at the intake area, Plaintiff removed his soiled clothes and was strip searched. Defs.' Ex. 6 at 7:41:09-7:45:05. After the strip search was concluded, Plaintiff was given his boxer shorts and the tee shirt that he had removed but not the long johns or long-sleeve shirt that was worn on top of his under garments. *Id.* at 7:45:05-7:45:16. He then received a new jumpsuit to put on over his under garments. *Id.* Plaintiff was eventually placed in the transport vehicle and secured. *Id.* at 7:56:36-7:57:17. Plaintiff departed SCI-Greene for SCI-Graterford without further incident. ECF No. 163 at ¶ 14.

The timeline of events established in the Extraordinary Occurrence Report (ECF No. 165-2 at 1-3), upon which paragraphs 3 through 14 of Defendants' Statement of Material Facts are predicated, are confirmed by the staff review of the video recording (*id.* at 5), as well as by the briefing checklist (*id.* at 6-7). In addition, the contemporaneous incident reports filed by Braunlich and the members of the extraction team support the timeline events from the Extraordinary Occurrence Report and the details from the briefing checklist. *Id.* at 12-27. Officer Standard's contemporaneous incident report provides further details about the efforts to obtain Plaintiff's compliance prior to the use of force. *Id.* at 28. The contemporaneous medical incident/injury report indicates that after the administration of OC and cell extraction, Plaintiff presented with water, red eyes, was breathing easy, his color was within normal limits, his speech was clear, and no distress was noted. *Id.* at 30. The report further indicates that Plaintiff's eyes were flushed with eye wash. *Id.* Defendant Braunlich's Declaration, Defendants'

Exhibit 8, also supports the timeline of events established in the Extraordinary

Occurrence Report.  ECF No. 165-7 at ¶¶ 3-18.

Plaintiff's Grievance

On February 9, 2017, Plaintiff filed Grievance No. 664485 relative to the

December 19, 2016 cell extraction.  ECF No. 163 at ¶ 29.  Plaintiff's grievance claims that

excessive force was utilized against him on December 19, 2016 during the cell

extraction, allegedly resulting in "severe bodily injury and emotional/mental injury."

*Id.* at ¶ 30.  Plaintiff claims that a "chemical agent" was utilized, and that he was forced

to remain in his soiled clothes for nine hours during his transfer from SCI-Greene to

SCI-Graterford, and that he was not provided with medical treatment nor chemical

decontaminated.  *Id.* at ¶ 31.  The only Defendant identified by name in the grievance is

Defendant Braunlich.  *Id.* at ¶ 32.  Following the filing of Plaintiff's grievance, an

investigation of his claims was initiated on February 14, 2017.  *Id.* at ¶ 33.  After the

investigation was concluded, an initial review response was issued on April 3, 2017

denying Plaintiff's grievance.  *Id.* at ¶ 34.  Plaintiff subsequently availed himself of the

various levels of appeal provided by DOC policy, however the denial of the initial

grievance was upheld.  *Id.* at ¶ 35.

DC-ADM 804

DC-ADM 804 is the DOC policy that controls the filing and resolution of inmate

grievances.  *Id.* at ¶ 36.  Section 1(A)(11)(b) provides that "the inmate shall identify

individuals directly involved in the event(s)."  *Id.* at ¶ 37.

6

## The Investigation

Plaintiff's allegation of abuse in Grievance No. 644485 (as well as a call he made to the inmate abuse hotline) triggered an investigation of the December 19, 2016 planned use of force.  *Id.* at ¶ 38.  The investigation was conducted by CO3 Stephen Silbaugh, and he ultimately determined that staff acted appropriately, no excessive force was utilized, and Plaintiff's allegations of excessive force were unsubstantiated. *Id.* at ¶ 39.  Silbaugh's investigation included a review of various portions of the Extraordinary Occurrence Report (ECF No. 165-5 at 20-26), the video recording (*id.* at 27), the contemporaneous medical report (*id.* at 28-29), as well as an interview with Defendant Braunlich (*id.* at 9).  ECF No. 163 at ¶¶ 40, 46-47.  Silbaugh noted that the video recording and medical report corroborated the description of the actions taken in the Extraordinary Occurrence Report and did not support Plaintiff's version of the events.  *Id.* at ¶¶ 41-46; *see also* Defs.' Ex. 5, Investigation 16-A-968, ECF No. 165-5 at 10. Silbaugh also noted that Defendant Braunlich's interview testimony was consistent with his contemporaneous reporting in the Extraordinary Occurrence Report and what is reflected in the video recording.  ECF No. 163 at ¶¶ 48-54.

## The Video Recording

Because Plaintiff's cell extraction was a planned use of force, a video of the incident was recorded.  *Id.* at ¶ 55.  The handheld video recording begins with a briefing of the event conducted by Defendant Braunlich.  *Id.* at ¶ 56.  Following the briefing, the video reflects Plaintiff being given a final order to comply with the cell extraction, and

he refuses this order. *Id.* at ¶ 57. After Plaintiff's refusal of the final order, one application of OC is administered by Defendant Braunlich. *Id.* at 58. Plaintiff then complies with the cell extraction, restraints are applied and Plaintiff is escorted from his cell. *Id.* at ¶ 59. Plaintiff is immediately escorted to the triage area where Defendant Tate is waiting. *Id.* at ¶ 60. Defendant Tate medically assesses Plaintiff consistent with the contemporaneous medical report and decontaminates him. *Id.* Plaintiff is then placed in the restraint chair for escort purposes and taken to the intake area to prepare for his transport to SCI-Graterford. *Id.* at ¶ 61. Upon arriving at the intake area, Plaintiff's soiled clothing is removed, a strip search is conducted, and he is provided with a clean jumpsuit for the transport. *Id.* at ¶ 62; Defs.' Ex. 6 at 7:41:09-7:45:16. Plaintiff is then placed in the transport vehicle and secured. ECF No. 163 at ¶ 63. Defendant Braunlich conducts an event briefing. *Id.* at 64.

<u>The Medical Records</u>

Plaintiff's contemporaneous medical records support the details of the Extraordinary Occurrence Report, the investigation and the video recording. *Id.* at ¶ 65. The December 19, 2016 entry by Defendant Tate reflects that she was called to Plaintiff's unit once the planned use of force had been authorized. *Id.* at ¶ 66. Defendant Tate's notes reflect that she decontaminated Plaintiff with eye wash and further noted no distress. *Id.* at ¶ 67.

<u>Procedural History</u>

Plaintiff initiated this civil rights action on July 24, 2017 by filing a Complaint in the Commonwealth Court of Pennsylvania, which was subsequently removed to this Court.  ECF No. 1.  Plaintiff filed a Second Amended Complaint on December 7, 2020.  ECF No. 116.  On August 19, 2021, this Court issued a Report and Recommendation partially granting the Corrections Defendants' Motion to Dismiss.  ECF No. 142.  The Report and Recommendation was adopted by the District Judge on October 14, 2021 (ECF No. 149) and on December 3, 2021 (ECF No. 150).  Subsequently, on December 7, 2021, the District Judge issued an order clarifying that the only surviving claims are the excessive force and deliberate indifference claims against Defendant Braunlich, and the deliberate indifference claim against Defendant Tate.  ECF No. 151.

Defendants Braunlich and Tate filed an Answer on December 14, 2021 denying Plaintiff's claims.  ECF No. 152.  Discovery was conducted pursuant to the Court's supplemental scheduling order.  ECF No. 153.  Defendants Braunlich and Tate have now moved for summary judgment contending that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.  The motion has been fully briefed and responded to, and thus, is ripe for review.

**B.  <u>Standard of Review—Summary Judgment</u>**

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is

one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue of material fact that precludes summary judgment. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing

*Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See*, *e.g.*, *Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *see also Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (noting that despite liberal construction of the complaint, the *pro se* plaintiff "still has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'") (quoting *Anderson*, 477 U.S. 242)).

In the situation where the events at issue have been captured on videotape, and there are no allegations or indications that the videotape was doctored or altered in any way, and no contention that what it depicts differs from what actually happened, the

court must view the facts in the light depicted by the videotape.  *Scott v.Harris*, 550 U.S.

372, 380-81 (2007)(finding that in assessing the summary judgment evidence the non-

movant's version of the events was so utterly discredited by the videotape that no

reasonable juror could have believed him).   In *McDowell v. Sheerer*, the U.S. Court of

Appeals for the Third Circuit similarly held that "where there are video recordings of

the incident in question, we need not adopt the non-movant's version of the facts if the

recording 'blatantly contradict[s]' the non-movant's version 'so that no reasonable jury

could believe it.'"   374 F. App'x 288, 291-92 (3d Cir. 2010) (quoting *Scott*, 550 U.S. at

380).

### C. <u>Discussion</u>

#### 1. <u>Exhaustion of Administrative Remedies</u>

Defendant Tate argues that Plaintiff has failed to exhaust his administrative

remedies against her and therefore judgment should be entered in her favor.  In

particular, Defendant Tate submits that as this Court previously determined in ECF No.

142, the only reference to medical care in Grievance No. 664485 is Plaintiff's statement

that he was allowed to remain covered in the chemical agent for more than nine hours

"without medical treatment or Chemical Decontamination."  ECF No. 165-3 at 2.  In

addition, Defendant Tate points to this Court's previous determination that although

Plaintiff names John/Jane Does Defendants in the Grievance, none of them are alleged

to be medical personnel.  *Id.*  As Plaintiff has failed to identify her or any medical

personnel in his Grievance, Defendant Tate submits that Plaintiff has not complied with

the requirement in DC-ADM 804 § 1(A)(11)(b) which states that the "inmate shall identify individuals directly involved in the event(s)."  As such, Defendant Tate contends that Plaintiff has failed to exhaust his administrative remedies against her. Plaintiff has failed to respond to this argument in his brief in opposition to summary judgment (ECF No. 174), but states generally in his Declaration in Opposition to Defendants' Motion for Summary Judgment that he "exhausted his administrative remedies with respect to all claims and all defendants.  ECF No. 177 at ¶ 13.

The Prison Litigation Reform Act ("PLRA") mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and when raised by a defendant it constitutes a threshold issue to be addressed by the court. *See*, *e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638-39 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)). Exhaustion is

mandatory under the PLRA regardless of the type of relief sought and the type of relief available through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Courts are not given discretion to decide whether exhaustion should be excused, *Ross*, 578 U.S. at 641, and there is no exception to the exhaustion requirement based on "futility." *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted).

The PLRA's mandatory exhaustion requirement means not only that a complaint filed before administrative remedies are exhausted is premature and cannot be entertained, it also means that failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. *Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*, 372 F.3d 218, 227-30 (3d Cir. 2004). That is because "the PLRA's exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93; *Spruill*, 372 F.3d. at 227-30.

Importantly, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31 (the "prison grievance procedures supply the yardstick for measuring procedural default."). Therefore, the procedural requirements for exhaustion in a given case "are drawn from the polices of the prison in question rather than from any free-standing federal law." *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill*, 372 F.3d at 231).

The Court of Appeals has explained that if the defendant demonstrates that the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable

14

to him or her." *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019) (citing *Rinaldi*, 904 F.3d at 268). "If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment." *Id.*

The Supreme Court explained in *Ross* that the term "available" means those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738). As noted in *Rinaldi*:

> the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

904 F.3d at 266-67 (quoting *Ross*, 578 U.S. at 643-44). *See also Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (misleading or deceptive instructions from a prison official, as well as clearly erroneous statements, can render a grievance process unavailable). The Court of Appeals has further held "that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement" but only as to the matters complained of and the relief sought in the grievance. *Shifflett*, 934 F.3d at 365. Absent a situation

where administrative remedies are not "available," a court may not excuse an inmate's failure to exhaust "irrespective of any 'special circumstances.'" *Ross*, 578 U.S. at 639.

The Pennsylvania Department of Corrections ("DOC") has an official Inmate Grievance System that governs the grievance and appeals process in Pennsylvania correctional institutions. *See* 37 Pa. Code § 93.9. The Inmate Grievance System is set forth in DC-ADM 804 and "is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate." DC-ADM 804, § 1(A)(2).  However, "[i]t is not meant to address incidents of an urgent or emergency nature" including allegations of sexual abuse or inmate misconduct charges, neither of which are implicated here.  *Id.*, § 1(A)(6) & (7).

As previously noted, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31. There are several requirements to filing a proper grievance in accordance with DC-ADM 804. Relevant to this case, DC-ADM 804 requires:

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
> a.   The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
>
> b.   *The inmate shall identify individuals directly involved in the event(s).*

     c.      The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.

     d.      If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

*Id.*, § 1(A)(11) (emphasis added).   Thus, the Court must examine the grievance at issue here.

The only grievance filed by Plaintiff that is relevant to the allegations made in this case is Grievance No. 664485.  *See* ECF No. 142 at 13; ECF No. 165-3 at 2-3.  In that Grievance, Plaintiff states that on December 19, 2016, he "was forcibly extracted from his cell . . . with the use of excessive force (By Means Of Chemical Agent and/or Physical Assault), directly resulting in severe bodily injury and emotional/mental injury."  ECF No. 165-3 at 2.  Plaintiff further states he was allowed to remain covered in the chemical agent for more than nine hours without medical treatment or chemical decontamination.  *Id.*  Plaintiff further alleges that the cell extraction was in furtherance of and in direct response to a conspiracy between DOC employees and the Montgomery County Detective Bureau and Montgomery County Correctional Facility and their agents/employees, to secure his appearance in Montgomery County for a DNA sample, which resulted in a violation of his civil rights under the Eighth Amendment cruel and unusual punishment clause, including failure to provide medical treatment; Fifth/Fourteenth Amendment, Due Process, including a state created danger; Fourth

Amendment illegal seizure of person; abuse of process under 42. Pa. Cons. Stat. § 8351; 1985(3)/1986 conspiracy; Sixth Amendment right to counsel.  *Id.* at 3.

It is clear from the record evidence that Defendant Tate was not directly involved in the cell extraction and, as such, she could not have been involved in any alleged conspiracy.  Moreover, nowhere in the Grievance does Plaintiff allege that Defendant Tate or some John/Jane Does on the medical staff failed to provide him with medical care after the fact.  The video recording shows that Plaintiff was aware that he was taken to the medical triage area on his unit immediately after he was extracted from his cell and placed in restraints, where a member of the medical staff (Defendant Tate) was waiting.  *See* Defs.' Ex. 6 at 7:29:56-7:33:04.  Yet Plaintiff fails to name any John/Jane Does medical personnel as directly involved in the incident in his Grievance.  Plaintiff has not offered any explanation in his Brief in Opposition to Summary Judgment for his failure to identify Defendant Tate or name any John/Jane Does on the medical staff in his Grievance.  He offers only his own, unsupported statement that he exhausted his administrative remedies with respect to all claims and all Defendants.  ECF No. 177 at ¶13.

Plaintiff's response, or lack thereof, is problematic because DC-ADM 804 clearly requires that "[t]he inmate shall identify individuals directly involved in the event(s)." *See* ECF No. 165-4 at 2, § 1(A)(11)(b).  Moreover, the Court of Appeals for the Third Circuit has consistently recognized that an inmate who has failed to identify a defendant in his grievance has procedurally defaulted his claim against that defendant.

*Spruill*, 372 F.3d at 234.  *See also Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d

Cir. 2005)(citing *Spruill*, 372 F.3d at 234) ("a Pennsylvania inmate's failure to properly

identify a defendant constitute[s] a failure to properly exhaust his administrative

remedies under the PLRA."); *Watts v. Herbik*, 364 F. App'x 723,  724 (3d Cir. 2010)

(failure to name a particular defendant in grievance did not give notice of alleged

wrongdoing and thus plaintiff procedurally defaulted his claims against that

defendant); *Rosa-Diaz v. Dow*, 683 F. App'x 103, 105-06 (3d Cir. 2017)(finding inmate

who failed to name a particular defendant in the grievance had not exhausted his

administrative remedies and procedurally defaulted his claim). The purpose of the

requirement in § 1(A)(11)(b) is to "put the prison officials on notice of the persons

claimed to be guilty of wrongdoing."  *Spruill*, 372 F.3d at 234.  "[I]t is clear, regardless of

the purpose of the requirement, that *Spruill* requires the prisoner [ ] to name in the

grievance those he eventually sues, upon pain of procedural default."  *Hemingway v.*

*Ellers,* Civ. A. No. 4:CV-07-1764, 2008 WL 3540526, at *11 (M.D.Pa.  Aug. 12, 2008)(citing

*Williams*, 146 F. App'x at 557).

Here the Court finds that the contents of Plaintiff's Grievance did not provide

notice to the DOC that he was pursing a claim against any medical defendants, let alone

Defendant Tate in particular.  In the absence of any justifiable excuse, which Plaintiff

has not provided, or a situation where administrative remedies were not available to

Plaintiff (no such allegations were made here), a court may not excuse an inmate's

failure to exhaust.  *Ross*, 578 U.S. at 639.  Accordingly, the Court finds that Plaintiff's

failure to identify Defendant Tate in a fully exhausted grievance bars him from proceeding against her in this civil action.  Because Plaintiff has procedurally defaulted his claim against Defendant Tate, the Court recommends that Defendant Tate's motion for summary judgment be granted and judgment entered in her favor.

### 2.  Excessive Force – Defendant Braunlich

Plaintiff contends that Defendant Braunlich's actions on December 19, 2016 while effectuating Plaintiff's extraction from his cell constitute excessive force in violation of the Eighth Amendment.  The central inquiry in an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).  "When prison officials malicious and sadistically use force to cause harm, contemporary standards of decency are violated . . . whether or not significant injury is evident."  *Brooks*, 204 F.3d at 108-09.

In determining whether a defendant has used excessive force in violation of the Eighth Amendment, courts look to several factors including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts to temper the severity of the forceful response."  *Brooks*, 204 F.3d at 106 (internal quotations and citation omitted).  The extent of injuries that an inmate suffers is relevant, but "does not end" this analysis.  *Hudson v. McMillian*, 503

U.S. 1, 7 (1992).  Consideration of these factors permit a court to make inferences concerning "whether the use of force could plausibly have been thought necessary" or whether the circumstances show "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (citation omitted).

Defendant Braunlich argues that Plaintiff's refusal to comply with multiple instructions to exit his cell for a court-ordered transport inspired the need to use force, and the undisputed evidence shows that the amount of force used in this case was modest in scope, duration and intensity as Defendant Braunlich administered a single application of OC spray to obtain Plaintiff's compliance.   In support, Defendant Braunlich argues that the courts have found that the "use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary[,]" quoting *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020).  Defendant Braunlich also cites *Easley v. Tritt*, No. 1:17-cv-930, 2021 WL 978815, at *15 (M.D.Pa. Mar. 16, 2021), and *Jones v. Wetzel*, No. 4:13-CV-1400, 2017 WL 4284416, at *8-10 (M.D.Pa. Sept. 27, 2017), for the proposition that it is reasonable for a corrections officer to use OC spray to effectuate removing a prisoner from his cell when the inmate has refused multiple orders to come to the door to submit to handcuffing.  In addition, Defendant Braunlich submits that the evidence shows Plaintiff was seen by medical staff after this incident, was decontaminated and was found not to have suffered any injuries resulting from this use of force.

Moreover, Defendant Braunlich argues that where, as here, a videotape "refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate.  ECF No. 164 at 10 (quoting *Smalls v. Sassaman*, Civ. A. No. 1:17-CV-2237, 2019 WL 4194211, at *8 (M.D. Pa. Sept. 4, 2019)(citing *Tindell v. Beard*, 351 F. App'x. 591 (3d Cir. 2009)); *see also McCullon v. Saylor*, Civ. A. No. 3:12-CV-445, 2013 WL 1192778, at *14 (M.D. Pa. Mar. 4, 2013) (quoting *Tindell*, 351 F. App'x at 596) (holding that "in assessing [excessive force] claims in a case where an encounter is captured on videotape [the court is] mindful of the fact that when 'videotape refutes [an inmate's] assertion that defendant[s] used excessive force,' or when the 'video shows that [an inmate] did not suffer any physical distress, and a medical report indicates that he had no visible swelling or injuries,' [the court] should conclude 'viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically,' and may enter summary judgment on an excessive force claim.")

Thus, Defendant Braunlich maintains that no rational trier of fact could find that he employed excessive force in a malicious and sadistic manner, and therefore, judgment should be entered in his favor.

In opposition, Plaintiff argues that his declarations have raised issues of fact as to what force was used.  In particular, Plaintiff contends that his declaration portrays a

22

completely needless use of excessive force against him who was locked in a cell.  ECF

No. 174 at 2.  Plaintiff argues that "[t]he fact that force was used when unnecessary, or

in a matter excessive to any need," that itself is evidence that defendants were acting

"maliciously and sadistically to cause harm[,]" citing several cases from other circuits in

support.  *Id.*  Thus, Plaintiff submits that a reasonable jury could find for him based on

the facts in his declaration and therefore, summary judgment must be denied.

It is clear from a review of the undisputed evidence that Defendant Braunlich

established a need for the use of force in extracting Plaintiff from his cell.  Plaintiff was

informed that he was going to be transferred to SCI Graterford pursuant to a court

order on December 14, 2016 and he indicated that he was going to refuse to go.  The

following day, a lieutenant and two correctional officers attempted to escort Plaintiff to

intake for his transfer but he refused to go.  On December 19th, Defendant Braunlich

notified Plaintiff of the transfer, which Plaintiff again refused.  Attempts to obtain

Plaintiff's compliance by the Hostage Negotiation Team and by Officer Standard also

failed.  Consequently, Defendant Braunlich requested and received authority to

assemble an extraction team.

The evidence further shows that in order to effectuate the transfer, some amount

of force was needed to extract Plaintiff from his cell as he demonstrated on numerous

occasions his unwillingness to cooperate, and the amount of force used to effectuate the

extraction was authorized and planned in advance, and appropriate precautions were

taken.  The video evidence indicates that Defendant Braunlich directed Plaintiff four

times to come to the door to submit to handcuffs and he refused.  Defs.' Ex. *6 at 7:27:18-7:27:37.*  A single application of OC spray was then administered, *id.* at 7:27:37-7:27:43, and after being restrained, Plaintiff was immediately taken to the unit triage area where he was evaluated and decontaminated by Defendant Tate, *id.* 7:29:56-7:33:04.  Moreover, nothing in the record suggests that Plaintiff suffered any injuries "beyond the temporary discomfort of the OC spray."  *Gibson*, 837 F. App'x at 862.  Under these circumstances, the use of OC spray was reasonably necessary to remove Plaintiff from his cell.  *Id.* (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984).  *See also Banks v. Mozingo*, 423 F. App'x 123, 126 (3d Cir. Apr. 18, 2011) (finding that use of mace in response to an inmate's refusal to voluntarily submit to handcuffing and the absence of any evidence that he suffered any serious injuries did not constitute excessive force).

Based on the undisputed evidence of record, including the video recording, the Court finds that no reasonable factfinder could find that Defendant Braunlich employed excessive force during the extraction of Plaintiff from his cell in a malicious and sadistic manner, and therefore, he is entitled to judgment as a matter of law in his favor.

This conclusion is not altered by Plaintiff's attempt to create triable issues of fact in his Declaration (ECF No. 177), Response to Defendants' Statement of Material Facts (ECF No. 175), and Statement of Disputed Factual Issues (ECF No. 176).  The statements in paragraphs 5-7 and 9-11 of Plaintiff's Declaration are not supported by any record evidence, but rather, are blatantly contradicted by the evidence proffered by Defendants in support of their motion for summary judgment, including the video recording.  The

statements in paragraphs 4, 13, and 14 are conclusions of law and the statement in

paragraph 12 is not material to the events occurring at SCI Greene on December 19,

2016.  Likewise, Plaintiff's Response to Defendants Statement of Material Facts and

Statement of Disputed Factual Issues do not comply with LCvR 56.C.1.b and 56.B.1 in

that he has not set forth the basis of any denial of Defendants' statements of material

fact or the basis of any of his disputed factual issues with appropriate reference to the

record.  *See* Notes 1 and 2, *supra*.  Thus, Documents ECF No. 175, 176 and 177 do not

create triable issues of fact to defeat summary judgment.  Moreover, where, as here, a

video recording of the incident in question exists which blatantly contradicts Plaintiff's

version of the events so that no reasonable factfinder could believe him, summary

judgment is appropriate.  *Scott*, 550 U.S. at 380-81; *McDowell*, 374 F. App'x at 291-92.

Accordingly, the Court recommends that summary judgment be granted in favor

of Defendant Braunlich on Plaintiff's Eighth Amendment excessive force claim.

### 3.     Deliberate Medical Indifference-Defendants Braunlich and Tate[5]

Defendants Braunlich and Tate argue that judgment should be entered in their

favor as to Plaintiff's claim of deliberate medical indifference because contemporaneous

documentation and video contradict Plaintiff's allegation that he did not receive any

medical treatment or decontamination after being sprayed with OC spray and no

rational trier of fact could find otherwise.  In response, Plaintiff argues that his

---

[5] Although the Court has determined above that Plaintiff failed to exhaust his administrative remedies as to his claim against Defendant Tate, out of an abundance of caution, the Court will include Defendant Tate in its analysis of Plaintiff's deliberate medical indifference claim.

Declaration creates material issues of fact as to whether the Defendants were deliberately indifferent to his medical needs, as he claims that that he was not decontaminated or provided with clean clothing after being sprayed with the OC spray. ECF No. 174 at 3.

To state a claim for deliberate indifference, a plaintiff must satisfy the two-part test drawn from *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "First, plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind'" – i.e., "deliberate indifference." *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted). "In addition, where denial or delay causes an inmate to suffer a lifelong handicap or permanent loss, the medical need is considered serious." *Id*.

As to the second prong, the plaintiff "must make a subjective showing that defendant acted with a sufficiently culpable state of mind." *Pinchak*, 294 F.3d at 499. The level of culpability is "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Thomas v. Dragovich*, 142 F. App'x 33, 36 (3d Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). A prison official must "know of an excessive risk to an inmate's health or safety and affirmatively disregard it." *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) (citing *Farmer*, 511 U.S. at 835-38). The Third Circuit Court of Appeals has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

While Plaintiff has not alleged that he suffered any lasting or continuing problems as a result of the OC spray, courts have held that the failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for a violation of the Eighth Amendment where the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.2002) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting *Estelle*, 429 U.S. at 104)).

27

Non-medical defendants like Defendant Braunlich cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prisoner official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236 (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Based on the record evidence, the Court finds that no reasonable factfinder could find that Defendants Braunlich and Tate were deliberately indifferent to Plaintiff's medical needs.  The undisputed evidence clearly shows that Plaintiff was not denied medical treatment after being sprayed with the OC spray.  For example, prior to the cell extraction, Defendant Braunlich contacted Medical and received authorization for the use of OC spray.  ECF No. 165-2 at 2.  After the OC spray was administered, Plaintiff was immediately escorted to the unit triage area where he was evaluated and decontaminated by Defendant Tate. *Id.* at 3, 30.  *See also* ECF No. 165-5 at 4; ECF No. 165-6 at 9.  Other than red, watery eyes, no other injuries were noted by Defendant Tate. ECF No. 165-2 at 30; ECF No. 165-6 at 9.  Plaintiff was then escorted to the intake area for transport to SCI Graterford, where he removed his clothing and after a strip search,

28

was provided with a new jump suit.  ECF No. 165-5 at 8, 10.  These events are

corroborated by the video recording.  *See* Defs.' Ex. 6 at 7:29:56-7:33:04, 7:41:09-7:45:16.

Plaintiff's unsupported denial that these events occurred is insufficient at the

summary judgment stage to create triable issues of fact.  *Barnett*, 573 F. App'x at 243;

*Zilich*, 981 F.2d at 696.  This is especially true where, as here, video evidence exists

which blatantly contradicts Plaintiff's version of events.  *Scott*, 550 U.S. at 380-81;

*McDowell*, 374 F. App'x at 291-92.  None of the documents Plaintiff has filed in

opposition to Defendants' summary judgment motion reference any evidence in the

record to support his denials.  As such, Plaintiff has failed to produce any evidence

"'such that a reasonable jury could return a verdict for [him]'" on his deliberate medical

indifference claim. *Zilich*, 981 F.2d at 696 (quoting *Anderson,* 477 U.S. 242)).

For these reasons, the Court finds that no reasonable factfinder could find that

Defendants Braunlich and Tate were deliberately indifferent to Plaintiff's medical

needs, and therefore, they are entitled to judgment as a matter of law in their favor.

Thus, the Court recommends that summary judgment be granted in favor of

Defendants Braunlich and Tate on Plaintiff's deliberate medical indifference claim.

## III.  <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that no genuine issues of material

fact exist and that Defendants are entitled to judgment as a matter of law.  Therefore, it

is respectfully recommended that the Motion for Summary Judgment filed by

Defendants Braunlich and Tate (ECF No. 162) be granted and that judgment be entered in their favor.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Rule 72.D.2 of the Local Rules of Court, Plaintiff shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto.  Plaintiff's failure to file timely objections will constitute a waiver of his appellate rights.

Dated:  September 27, 2022.

BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

cc:    Arthur Bomar, Pro Se
       DK-1677
       SCI-Phoenix
       1200 Mokychic Drive
       Collegeville, PA  19426